# THE PEOPLE *ex rel.* BOWMAN *v.* HOVIOUS, Sheriff of San Mateo County.

A JUDGMENT obtained and docketed in the Superior Court of the city of San Francisco, became a lien upon the real property of the judgment debtor, not exempt from execution, within the county of San Francisco.

The Act of April, 1856, creating San Mateo county out of a portion of the territory of the county of San Francisco, did not destroy or affect judgment liens then existing; but such liens continued upon the land of the judgment debtor, not exempt from execution, until the expiration of the statutory period, without recording the judgment in the county of San Mateo where the lands lie. And recording the judgment in this latter county, after the lien was exhausted by the expiration of the two years from the time of its docketing in the Superior Court, will not revive the lien.

APPEAL from the Twelfth District.

Application for mandamus to compel the defendant as Sheriff of San Mateo county, to execute a deed to relator of certain lands in that county heretofore sold by said Sheriff under execution and bid in by plaintiff. The Court below awarded the writ. Defendant appeals. The facts are stated in the opinion of this Court.

*Williams, Patterson & Stow,* for Appellant.

The judgment of July 6th, 1855, was a lien upon the land in San Mateo county from the time the transcript of the docket was filed in the Recorder's office of that county. (Pr. Act, sec. 204, 207, 210; 21 Wend. 584; 7 Mo. 554; 4 Kern. 16.) And if so a lien, then Stow, who held the judgment, was a redemptioner. (Pr. Act, sec. 230.)

A judgment was not at common law a lien upon real estate; the lien is a creation of the statute, and can only be created and continued in the manner pointed out by the statute. (*Shew* v. *Jones,* 2 McLean U. S. C. C. R. 78; *U. S. Bank* v. *Longworth,* Id. 35; *Ex parte Becker,* 4 Hill, 613; *Isaac* v. *Swift,* 10 Cal. 81.)

If San Mateo county was a county July 6th, 1855, when the Lynch judgment was rendered, it would have become a lien by filing the transcript. (Pr. Act, sec 107.) The lien commences or is created by filing the transcript with the Recorder, and continues two years from that time.

But we say the judgment was not a lien on any real estate situate

without the boundaries of the city or town of San Francisco, (for those boundaries see Laws of 1856, 146) and hence, when it was docketed, it was not a lien upon the real property in question. And after 1856, when San Mateo county was created with all the machinery of a county, Sheriff, Clerk, etc., no judgment could be or was a lien in that county, unless a transcript was filed in the office of the Recorder thereof. After June 1st, 1856, the Sheriff of San Francisco could not sell this land on execution; but the Sheriff of San Mateo county could. Nor unless a transcript was filed with the Recorder of San Mateo county, how could the execution issued on this judgment to the Sheriff of San Mateo county direct the Sheriff to comply with section one hundred and ten of the Practice Act.

On the eighteenth day of April, 1857, the Legislature (Statutes of 1857, 222, 65) recognized the Act of 1856, creating San Mateo county, and confirmed the acts of the officers elected in 1856, and by section eleven, page two hundred and twenty-four, laws of 1857, declare that judgments should not be a lien unless docketed in that county. Here we have legislative authority to file this transcript and make the Lynch judgment a lien; and we had the right to do it at any time within five years. (4 Seld. 16.)

Again, if San Mateo county was another county, for the purpose of issuing an execution and enforcing it, it was another county for the purpose of filing a transcript therein. (4 Halst. 357; 4 Yates, 399, 412; *Drake* v. *Vaughan*, 699, Mars. 147; *State of Ohio* v. *Walker*, 17 Ohio, 135; *People* v. *Morrill*, 21 Wend. 563.)

Section two hundred and seven of the Practice Act applies to new counties—that is, counties created after its passage, as well as to old counties—and within its meaning another county is as much one formed after 1851 as before. (21 Wend. 575.) And as the Legislature in the acts creating San Mateo county did not provide for the liens of judgments then existing, the intention must have been to make section two hundred and seven apply by filing a transcript to create the lien. It only affects the remedy and not the contract.

*Hoge & Wilson and Heydenfeldt*, for Relator and Respondent.

The judgment rendered July 11th, 1855, before a division of the counties, became a lien on the land in controversy. That lien lasted two years, and then expired. The division of the county pending the lien did not affect or in any way impair it. (*Davidson* v. *Root*, 11 Ohio, 98.) The land having been once incumbered with a lien for two years, cannot again be so incumbered by the same judgment. In each county of the State there may be one lien for two years (in the county where the judgment is rendered) by the docketing of the judgment; in any other county by filing transcript of the judgment docket. (Prac. Act, secs. 204, 207.)

A judgment cannot be docketed a second time, so as to make a second lien; neither can a second transcript of the docket be filed so as to create a second lien in a foreign county.

The land in controversy being in San Francisco when the judgment was rendered, and the lien being fixed for two years, it always remained subject to that lien; and so far as that judgment was concerned, San Mateo county never was " any other county " than San Francisco. (Prac. Act, sec. 207.)

Where a judgment is a lien by docketing, a transcript filed does not create any lien; that is only resorted to where the docket does not create the lien. Here the docket did create the lien. The whole policy of our law is to secure the judgment creditor a lien for two years on the realty of the debtor. If he does not avail himself of his lien in that time, he loses it. The debtor is only tied up for two years; after that he may convey free from the lien. The creditor cannot, after the lien has expired, by a mere division of the county, acquire a second lien for two more years, and so on *ad infinitum* as often as new counties are laid off.

The filing of the transcript, then, created no lien, and the alleged redemptioner having no lien, was no redemptioner. (Prac. Act, sec. 200, Cl. 2d.) The lien in San Francisco being entirely dead, it is doubtful if a transcript of the docket would create a lien in any other county.

COPE, J. delivered the opinion of the Court—BALDWIN, J. concurring.

This is an application for a *mandamus*. The following are the

31

facts: On the sixth of July, 1855, Thomas A. Lynch recovered a judgment in the late Superior Court of the city of San Francisco, against Alvin Adams, Daniel H. Haskell, and Isaac C. Woods, for the sum of $10,143.06, which judgment was duly docketed in the office of the Clerk of that Court, as required by the statute. On the eighteenth of August, 1859, the relator recovered a judgment in the District Court for San Mateo county, against the same defendants, for the sum of $5,000, and certain lands situated in that county were levied upon and sold under an execution issued upon this judgment. The relator became the purchaser, and received a certificate of sale in the usual form. On the twenty-first of February, 1860, a copy of the first mentioned judgment, together with a transcript of the docket, was filed in the office of the Recorder of San Mateo county, and afterwards, and within the time limited for the redemption of the lands from the sale to the relator, the holder of that judgment paid to the defendant the amount necessary for that purpose. The question is as to the validity of this redemption, and the only point to be determined is, whether a lien was acquired upon the lands in question by the filing of the transcript in the county of San Mateo.

The act creating San Mateo county was passed in April, 1856, and prior to that time the territory embraced within the limits of that county constituted a part of the county of San Francisco. The judgment under which a redemption is claimed to have been made was docketed in July, 1855, and from that time became a lien upon all the real estate of the judgment debtors, not exempt from execution, situated in San Francisco county. We cannot assent to the view that the provisions of section two hundred and four of the Practice Act were not applicable in their full extent to judgments obtained in the Superior Court of the city of San Francisco. The proposition is, that under the provisions of that section the lien of such judgments did not extend beyond the corporate limits of the city, but we cannot adopt a construction which is not justified by the letter or spirit of these provisions. The power of the Legislature over the subject cannot, of course, be questioned. It is clear, therefore, that a lien, such as we have stated, attached upon the docketing of the judgment in 1855, and our opinion is, that

this lien was not destroyed by the subsequent organization of the county of San Mateo, but continued until cut off by the limitation affixed by the statute.   No provision was made in the act creating San Mateo county affecting its existence or continuance, and we do not think that the mere fact of the organization of that county was sufficient to destroy it.   It existed by positive provision of law, and could not be taken away by implication and inference.   We think, however, that there was no intention to interfere with the operation of any lien which had previously attached.   The effect of such interference would have been to change entirely the situation and condition of creditors in that respect, and we cannot suppose that any such change was contemplated in the passage of the act.   The case of *Davidson* v. *Root* (11 Ohio, 98) is directly in point: " Judgment liens," say the Court, " are of a purely legal character. They do not exist at common law.   Their creation, extension, and continuance depend entirely upon statutory provision.   Their operation, as a part of the remedy to enforce the collection of a debt, is governed by the terms of the statute.   That the lien may attach it is certain that, by the statute, the land must be in the county where the judgment is rendered, at the time of its rendition ; or if in another county, there must be an actual levy.   And it is, therefore, supposed that where a new county is organized, with no saving clause in the act, and lands subject to a judgment lien in the old county fall within the new organization, the lien ceases to exist. We do not think so.   The lien being given by express provision, although it is admitted, as a part of the remedy, to be within the control of the Legislature, must, nevertheless, remain until lost by act of the judgment creditor, or taken away by subsequent legislation.   There is nothing, express or implied, in the Act of 1838 organizing Erie county, inconsistent with the enforcement of this lien.   It may be said that after the division of the counties the records of Erie furnish no notice of this incumbrance to the purchaser.   This is true ; nor would they furnish such notice had there been ever so extensive a saving clause in the act.   There is no difference, in our opinion, in principle between this judgment lien and a lien created by mortgage, recorded in Huron county before the division.   The records of Erie would have given no notice of

476 SUPREME COURT—JANUARY TERM, 1861.

the fact at the date of this purchase by the respondents. The law requires all instruments by which lands are incumbered to be recorded in the county where the land lies; but it has never been supposed that liens created by such instruments became inoperative because the land incumbered, by a subsequent division, fell into a different county than that in which such instrument was recorded. Nor has a new record in such cases been considered necessary to protect the grantee against subsequent purchasers without notice. The analogy between the two cases is complete." We have quoted at length from the opinion in this case, because it is the only case in point to which we have been referred, and because the reasons presented are well stated and entirely conclusive.

If we are correct in our views thus far, there is little more to be said. The property could not be subjected a second time to a lien under the same judgment. This is the only conclusion at which we can reasonably arrive. If such a lien, once exhausted, can afterwards be revived, there is no limit to the number of times that this may be done. It may be done over and over again, as often as the formation of a new county furnishes an opportunity for that purpose. No special consideration is due to a proposition involving results so palpably absurd.

We think the decision of the Court below was correct, and the order directing the issuance of a *mandamus* is affirmed.