## GARVIN v. GARVIN.

1. RES JUDICATA—CASES CRITICISED.—In the case of Garvin *v.* Garvin
(27 S. C., 472), the question whether a live execution on a senior judg-
ment having lien was necessary to sustain a sale made under a junior
execution having no lien, was not considered or determined, and was
not necessarily involved in any matter that was there decided.

2. JUDGMENT LIEN—NEW COUNTY.—A judgment obtained against a de-
fendant being a lien on lands upon which he resided in the county
where obtained, continues to be a lien on the same land when it is cut
off as a part of a new county, the act creating the new county not hav-
ing otherwise provided.

3. EXECUTIONS.—Under the Code of 1870, executions could be issued, of

course, only within five years after entry of judgment, and, after the amendment of 1873, renewal executions were not authorized, as of course, even within the five years.

4. TRANSCRIPT OF JUDGMENT—EXECUTIONS.—A judgment having been obtained against a debtor in his own county, retains its lien as of its date on the lands of the debtor after they have been embraced within the limits of a new county, but a transcript of the judgment being filed in the new county, an execution could be issued under the act of 1873 to enforce this lien at any time within five years from the filing of such transcript.

5. SHERIFF'S SALES—UNLEVIED EXECUTIONS.—Where a sheriff sells under an execution issued to enforce a judgment which was rendered after the lands levied had been alienated by defendant, the purchaser at the sheriff's sale will get good title if there was then in the sheriff's office an execution issued on an older judgment which was a lien on these lands.

6. IBID.—IBID.—In this case, the execution levied furnished no authority to make the sale, and the sale could therefore be referre d to the other execution in his office which did furnish such authority ; and, indeed, in the absence of such an execution, to the judgment lien itself, which would be sufficient to support a sale the proceeds of which the law required to be applied to the oldest judgments.

7. ADVERSE POSSESSION—NON-SUIT.—Whether a defendant has been in adverse possession of land for a period of time sufficient to bar an action for its recovery involves a question of fact which cannot be decided under a motion for non-suit.


Before HUDSON, J., Aiken, April, 1890.


In granting an order of non suit in this case, the presiding judge said :

The title of the present plaintiff is a sheriff's deed bearing date the 7th of January, 1878, the sale having been made under an execution upon a judgment of Robert Garvin against John Garvin, entered on the 17th of September, 1877.    There was at that time in the sheriff's office in this county the original execution which was had upon the judgment of John Fox against Robert Garvin and others, recovered in the County of Lexington on the 6th of April, 1868.    This original execution from the County of Lexington was sent down to the office of the sheriff of the County of Aiken on the 5th of August, 1875, the party sending it evidently expecting that it would be enforced according to the terms

of the act of 1849, but that act had been repealed and was not re-enacted until (date). At the same time, July 26th, 1875, transcript of judgment of John Fox. against Robert Garvin, John Garvin, and others, was sent down to Aiken County and put on file the 5th day of August, 1875. It is in evidence on the part of the plaintiff, who saw fit to introduce the same, that Robert Garvin, under whom the plaintiff claims, sold and conveyed to R. C. Garvin 500 acres of land on the 15th day of April, 1874, and the deed is recorded January 5th, 1875. There is a good deal of other evidence introduced by the plaintiff, none, however, but what I have recited which bears upon the main point urged under the motion for non-suit.

It is contended by the defendants' counsel that at the time of the sale by sheriff Holley, there was but one valid outstanding unsatisfied execution against the property of Robert Garvin, and under that the sheriff levied and sold, and the defendants' counsel insist that there was at that time no other execution having any active energy whatever; that the original execution issued upon the Fox judgment in Lexington County was without active energy, and that the transcript of the judgment sent down to the County of Aiken, an execution rather upon the transcript of judgment sent down August 5th, 1875, was issued by the clerk of this court without any authority of law; that neither of these executions had validity because there was no renewal, no application for renewal, no order of court granting renewal; that without leave of the court, the clerk had no right to issue the execution on the transcript, and upon this account chiefly he relies for his motion for a non-suit.

It is, in reply to this, contended by the counsel for plaintiff that the judgment of John Fox against Robert Garvin and others, lodged in the County of Lexington, was a valid lien upon this land, and that the act of 1849 was never intended to apply to such a case as this, because the land originally lay in the County of Lexington, and when the County of Aiken was carved out of portions of Lexington, Barnwell, Edgefield, and other counties, that did not divest the lien of judgment of land so cut off, and that although the executions had lost their active energy, yet the lien of the judgment was good, and the sale of the sheriff, under

the judgment and execution of Robert Garvin against John Garvin, was valid, and the purchaser could refer his title not only to that execution, but to the execution of John Fox against Robert Garvin and others; that it had become necessary, it would be an advantage in thus selling to apply the money to the lien, this older lien, although the executions issued thereon in the office might have lost their active energy. It is contended, therefore, that the purchaser is protected by the lien of the Fox judgment, which dates back as far as 1868, and, of course, would prevail over the title which Robert Garvin made to R. C. Garvin in 1874.

This case has been twice in the Supreme Court, and it has been twice sent back. The law, in the two judgments rendered by the Supreme Court, of course, must control me in deciding this most interesting question, and after having heard these judgments read and fully commented upon by counsel, I don't perceive that the question presented to me was ever raised, presented to, and decided by the Supreme Court in either of these judgments, and I regard the question as simply this, Can one purchase lands at a sheriff's sale under a judgment and execution senior to an alienation by the judgment debtor, prevail in his title over the alienee, when there is in the clerk's office a subsisting judgment creating a lien upon the land of the judgment debtor, but when, at the same time, there is not in the sheriff's office a vital execution senior to the alienation? That, it appears to me, is the simple question.

If a sheriff sells land under an execution which is not valid, the sale would nevertheless be good to the purchaser, if there be other subsisting live executions in his office against the same debtor; but the question here presented is not that in this case; according to the view that I take of it there was no other execution in the sheriff's office, at or before the sheriff's levy and sale, which had vital energy except the one under which the sale was, and that execution under which the sale was made, was issued upon a judgment recovered against Robert Garvin several years after he had sold the land to his son, R. C. Garvin, the present incumbent; so that R. C. Garvin held the title senior to the only vital execution at the time of the sale which was in the sheriff's

office, and his title must prevail, the title of R. C. Garvin, over the purchaser at the sheriff's sale, unless that purchaser can protect himself under the lien of the Fox judgment. The validity of the sheriff's sale depends not upon the existence of liens in the clerk's office; with the clerk's office he has nothing to do, it deals only with the authority which is contained in the execution in his own office; and if he sells, if the sheriff sells under an execution in his office, which lien has vitality, the purchaser cannot claim the benefit of an old judgment lien on which there is no live execution.

I hold, therefore, that according to the plaintiff's own showing, he has proved that R. C. Garvin had a deed of this land; had a title from Robert Garvin three or four years older than the title which John Garvin acquired in 1878. The presumption is that the title is valid. There is no evidence that it is an invalid title; no evidence of fraud; no evidence of invalidity in that deed. The result of this proof is that the plaintiff has proved himself out of court by showing in another, to wit, the present defendant, a title superior to his own.

The only other ground upon which the non-suit was moved for is because the *remittitur* of the last judgment of the Supreme Court was not put in evidence. I hold that there is nothing in that, because the printed judgment itself was in evidence, and the case had gone to trial by both parties acknowledging that it had been properly sent down here for a new trial, fully recognizing it as being sent back by the Supreme Court, and the judgment of that court, as printed, read before this court. It is upon the first ground, and that alone, upon which I grant the non-suit. Let the order for a non-suit be prepared.

Judgment on the non-suit was duly entered, and plaintiff appealed.

*Messrs. Henderson Bros.* and *Croft & Chafee*, for appellant.

*Messrs. L. T. Izlar* and *Izlar, Glaze & Herbert*, contra.

September 14, 1891. The opinion of the court was delivered by

MR. JUSTICE MCIVER. This case having been several times before this court under previous appeals, it will not be necessary to give any detailed statement of the facts presented in its various phases, as these may be ascertained by reference to the former adjudications in 27 S. C., 472, and 31 S. C., 581. We will therefore confine ourselves to a general statement of the nature of the case, together with such facts as are pertinent to the questions raised by the present appeal.

The action was brought to recover possession of a tract of land now included within the boundaries of Aiken County, but which formerly constituted a part of Lexington County, from which it was cut off when Aiken County was established by the act of 1871, 14 Stat., 695. The plaintiff claims under a deed made by the sheriff of Aiken, dated 7 January, 1878, by virtue of a sale made under certain executions obtained against Robert Garvin, the former owner of the land, while the defendant claims under a deed dated 15th April, 1874, from said Robert Garvin to himself. It seems that there were two judgments obtained against Robert Garvin, the first of which, designated as the Fox judgment, was entered in the clerk's office of Lexington County, on the 6th of April, 1868, and execution duly issued thereon, at which time the land in question was embraced within the boundaries of Lexington County, where Robert Garvin then resided. That execution was returned to the clerk's office on the 4th of April, 1872, "unsatisfied and for renewal," by the sheriff of Lexington County. On the fifth of August, 1875, Aiken County in the meantime having been established, and the land in question having thereby been embraced within the boundaries of that county, a transcript of said judgment was filed in the office of the clerk of the Court of Common Pleas for Aiken County, and on the same day an execution was issued thereon by the said clerk, which for convenience will be designated as the Quash execution, that being the name of the clerk who issued it.

The second judgment, which will be designated herein as the Garvin judgment, was obtained in Aiken County, in September, 1877, and execution to enforce the same was duly lodged with the sheriff of that county on the 10th of December, 1877. Under this last mentioned execution the land was levied on and sold by the

sheriff to the plaintiff, as hereinbefore stated, on the 7th of January, 1878. It seems, however, that the land in question had been previously levied on under the Quash execution, though the date of such levy is not given, but the sale under that levy was enjoined until the determination of the issues in the case in which the Garvin judgment was obtained.

Under this state of facts, as presented in the development of the plaintiff's case (he having offered in evidence the deed from Robert Garvin to the defendant herein, for the purpose of showing that both parties claimed from a common source of title), a motion for a non-suit was made and granted by his honor, Judge Hudson, who held that the plaintiff having shown that the defendant held the land under a deed executed prior to the recovery of the judgment under which the sale was made to the plaintiff by the sheriff, the plaintiff had proved himself out of court, by showing that defendant held under a superior title. For he held that plaintiff could not avail himself of the lien of the Fox judgment, which was anterior in date to the defendant's deed, because there was not at the time of the sheriff's sale any execution on that judgment in the sheriff's office, having active energy, and hence there was no other authority for the sheriff to make the sale except the execution issued to enforce the Garvin judgment. The Circuit Judge further held that the question now presented had not been adjudicated by any former decision in this case, as was claimed by plaintiff.

From this judgment of non-suit plaintiff appeals upon the several grounds set out in the record, which substantially make three questions : 1st. Whether the point now presented has been already adjudicated by any former decision in this case. 2nd. Whether there was at the time of the sheriff's sale any valid execution in his office, having active energy, from which his authority to make the sale could be derived. 3rd. If not, whether the lien of the Fox judgment was not sufficient of itself to constitute authority for the sheriff to make the sale under the execution junior to defendant's deed.

As to the first question, we agree with the Circuit Judge that the point now raised has never been adjudicated by any former decision in this case. In the case as reported in 27 S. C.,

472, which is relied upon by plaintiff as sustaining his view of this question, the only point really decided was that the Fox judgment was not merged in the Garvin judgment, and therefore plaintiff could claim the benefit of the lien of the former; but whether he could enforce such claim without showing a live execution issued on such judgment was neither considered nor determined. His right to the benefit of the lien of the Fox judgment was recognized; but how he should make such right available, was not a question in the case. We have looked carefully through all the former decisions in this case, and we have been unable to find that the question now presented has ever before been decided, or that its decision was necessarily involved in any adjudication heretofore made.

As to the second question, we are unable to agree with the Circuit Judge. The Fox judgment was recovered in Lexington County prior to the enactment of the Code, and as the land then was embraced within the limits of that county, where the judgment debtor then resided, it unquestionably then became a lien upon the land, which continued until the debt was paid either in fact or by operation of law. The fact that the land was afterwards cut off from Lexington County and embraced within the boundaries of the new County of Aiken, established by the act of 1871, hereinbefore cited, could not affect this lien; for there is nothing in that act which indicates any intention to give to it any retroactive operation, and hence, under the well settled rule, no such operation can be given to it. Indeed, the terms of the act, so far from showing any intention to give to it a retroactive operation as to judgments already recovered, indicates precisely the contrary; for while provision is made for the transfer of all papers and records in *pending* suits, &c., nothing of the kind is said in reference to cases already determined. But in addition to this, counsel for appellant has furnished this court with two cases from other States which distinctly decide the point in accordance with the conclusion which we have adopted. *Davidson* v. *Root*, 11 Ohio, 98; *People ex rel. Bowman* v. *Hovious*, 17 Cal., 471.

The lien of the Fox judgment thus continuing on the land after it was cut off from the County of Lexington, where the

judgment had been originally entered, and embraced within the limits of the new County of Aiken, the question is whether there was, at the time of the sheriff's sale, any execution in the sheriff's office of Aiken having active energy, under which such lien could be enforced. By sec. 306 of the original Code of Procedure it was provided that, "Writs of execution for the enforcement of judgments, as now used, are modified in conformity to this title, and the party in whose favor judgment has been *heretofore*, or shall hereafter be, given * * * may, at any time within five years after the entry of judgment, proceed to enforce the same, as. prescribed by this title." And the next section (307) provides, "After the lapse of five years from the entry of judgment, an execution can only be issued by leave of the court. * * * But the leave shall not be necessary when execution has been issued on the judgment within the five years, and returned unsatisfied in whole or in part." And section 315, in the same title, provides, "If the first execution is returned unsatisfied, in whole or in part, another execution, as of course, may be issued at any time within the period limited by this act for issuing executions.'"

It will be observed that these provisions, with respect to the enforcement of judgments by execution, are made retrospective in express terms, and apply as well to executions issued to enforce judgments previously as well as subsequently rendered; while the provision in section 313, with respect to the lien of judgments, are in like express terms prospective only—"final judgments *hereafter* rendered," &c. It is therefore contended by counsel for appellant that, as the provisions above quoted are applicable to the issuing of execution to enforce the Fox judgment, although it was recovered prior to the Code, they warranted the issuing of the Quash execution on the 5th of August, 1875, as that was within five years after the return of the first execution unsatisfied on the 4th of April, 1872, though not within five years from the original entry of the judgment in Lexington County. This view proceeds upon the assumption that the provision above quoted from section 315 authorizes the issue of a second execution, as of course, at any time within five years from the return of the first execution. But, in the first place, we do

not think that it is a proper construction of section 315; for by the preceding part of. that section, not quoted above, it is provided that executions shall be returnable within sixty days, and it seems to us that the proper construction of the words quoted is, that though an execution must be returned within sixty days, yet it may be renewed at any time within five years from the entry of the judgment, as of course—not at any time within five years from the return of the execution. But, in the second place, section 315 of the Code was stricken out by the act of 25 of November, 1873 (15 Stat., 499), and the provisions inserted in lieu thereof contained no such provision as that quoted above from section 315 of the Code. So that even if the construction of section 315 contended for by the appellant could be adopted, yet as the plaintiff did not undertake to avail himself of that construction until after that section had been repealed, he cannot claim any benefit thereunder.

The act of 1873, just referred to, does, however, contain another provision which, as it seems to us, will warrant the issuing of the Quash execution on the 5th of August, 1875, which was within three years before the sheriff's sale. Section 14 of that act, after providing for the filing of a transcript of a judgment obtained in one county in another county, contains this language: "And from the date of the filing of such transcript, it shall have the same force and effect as if the judgment had been originally entered in the county in which said transcript is filed." Now, if the Fox judgment had been originally entered in the County of Aiken on the 5th of August, 1875, one of the effects which it would have had would have been to authorize the issuing of an execution thereon at any time within five years from that date; for it will be observed that section 306 of the original Code is not repealed by the act of 1873, or by any other act, so far as we are informed. The fact that the Fox judgment may have had the additional force and effect of fixing a lien on the land from the date of its entry in Lexington County, as we have seen, instead of from the date of the filing of the transcript thereof in Aiken County, cannot deprive it of the further effect under this provision of the act of 1873, of authorizing the issue of an execution thereon at any time within

five years after the filing of the transcript in Aiken County.
And as the.lien on real estate is derived from the judgment, and
not from the execution, which only serves as authority to the
sheriff to enforce it, we do not see why the Quash execution,
which was issued within five years after the filing of the tran-
script did not furnish authority to the sheriff to enforce the pre-
viously existing lien of the judgment arising from, and at the
time of,.the original entry of the judgment in Lexington County.

It seems to us, therefore, that though the execution issued on
the Garvin judgment, under which the sheriff made the sale, was
not sufficient authority to enable him to do so, inasmuch
as that judgment was not entered until after the land was
conveyed by the judgment debtor to the defendant here-
in, yet there being at the time in the office of the sheriff another
execution—the Quash execution—which would furnish such
authority, his act in making the sale may, under the well settled
doctrine (*Agnew* v. *Adams*, 17 S. C., 364), be referred to that
authority; and as the Quash execution was issued to enforce the
lien of a judgment which antedated the conveyance under which
the defendant claims, the purchaser at such sale took a title supe-
rior to that of the defendant. We have not deemed it neces-
sary to consider the effect of the act of 1884 (18 Stat., 749)
and the act of 1885 (19 Stat., 229), amending the Code, as
it had been previously altered by the act of 1873, above referred
to, because both of those amendatory acts expressly provide
that nothing therein contained shall be construed to affect the
lien of judgments or executions thereunder entered prior to the
1st of March, 1870, and hence their provisions cannot affect this
ante-Code judgment or any execution issued thereunder.

It is contended, however, by counsel for defendant, that while
it is true that where a sheriff sells under an execution which has
been satisfied or has lost its active energy, and he has at
the time another valid execution in his office having active
energy, the sale may be supported by referring it to the
latter execution; yet where the execution under which the sheriff
sells is unsatisfied, and having active energy, furnishes authority
to make the sale, that the sale must be referred to it, and the sale
cannot be supported by referring it to another valid enforcible

execution then in the sheriff's office; and hence it is claimed that as the sale in this case was made under the Garvin execution, which was a valid execution, having active energy, it cannot be supported by referring to any other execution which may have been in the sheriff's office at the time.

This view cannot be sustained for two reasons. In the first place, the Garvin execution having been issued to enforce a judgment obtained after the land had been conveyed away by the judgment debtor, that judgment never was a lien upon the land; and, of course, the execution issued upon it furnished no authority whatever for the sale—no more than if the execution had for some reason been absolutely void, or had been fully satisfied. In the second place, the view contended for is in direct conflict with a recent decision of this court in the case of *Henderson* v. *Trimmier*, 32 S. C., 269. In that case there were three liens on the land—first, the Cooley judgment; second, the mortgage in favor of Trimmier; and third, the Matthis judgment. The land was sold under the junior judgment, and it was held that the lien of the mortgage was divested thereby, although the execution on the Cooley judgment had lost its active energy. In that case, though the Matthis execution was held to furnish sufficient authority to make the sale, inasmuch as the judgment upon which it was issued was a lien, though subject to the prior lien of the mortgage; yet the sale was supported, and it was held to vest a good title in the purchaser, free from the lien of the mortgage, by virtue of the senior lien of the Cooley judgment. As it is well expressed by his honor, Judge Fraser, in his Circuit decree in that case: "The sale being for the benefit of the older judgment lien, the title under such sale is necessarily sustained by such older lien."

So that even if we are in error in holding that the Quash execution was a valid execution, having active energy, which, being in the hands of the sheriff at the time, would have furnished him with authority to make the sale, yet under the case just cited the title of the plaintiff, who purchased at the sheriff's sale, may be supported by the lien of the Fox judgment, even though no valid execution on that judgment may have been in the sheriff's hands at the time of the sale. There can be no doubt that where a

sheriff makes a sale of real estate under an execution, he is bound to apply the proceeds of such sale to any judgment senior to that under which the sale is made, for such is the express provision of the statute. "The sheriff shall pay over the proceeds of sale of any real estate sold by him to any judgment having prior lien thereon." Gen. Stat., § 685. This provision is even more stringent than that found in section 60 of the sheriff's act of 1839, from which the present section seems to have been taken ; for there the requirement was to pay over the proceeds of sale to any judgment having prior lien, provided notice of such judgment be given to the sheriff of such judgment before the proceeds have been otherwise applied. But there is no such proviso in the section as incorporated in the General Statutes, and hence it would seem to be necessary for the sheriff to examine the clerk's office to see if there is any judgment having prior lien before he can safely apply the proceeds of the sale of real estate. If, therefore, the holder of a senior judgment is entitled to receive the proceeds of the sale of his judgment debtor's real estate, when made under a junior judgment, it would seem to be nothing but right and proper that the purchaser, whose money has been applied to the senior lien, should be protected under such lien. This doctrine seems to have been settled by the case of *Vance* v. *Red* (2 Speer, 90), which has been recognized and followed in a number of subsequent cases. This disposes of the third question made by the plaintiff's grounds of appeal.

The defendant has, however, according to the proper practice, given notice that he will ask this court to sustain the judgment below, upon a ground other than those upon which it was based by the Circuit Judge. This ground, as stated in the notice, is because "it appears by the evidence introduced by the plaintiff that the defendant has been holding this land in dispute adversely to the plaintiff and all the world more than ten years last past before the commencement of this action." To dispose of this ground, it is sufficient to say that whether a party has been in adverse possession of a tract of land for the prescribed time, presents a question of fact, which the Circuit Judge would have had no authority to determine, as that was a matter for the jury.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that ourt for a new trial.